FILED'10 MAY 14 13:47USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHRISTOPHER MANSFIELD,                )
                                      )
               Plaintiff,             )        Civil No. 09-63-JO
                                      )
       v.                             )        OPINION AND ORDER
                                      )
COMMISSIONER, SOCIAL SECURITY         )
ADMINISTRATION,                       )
                                      )
               Defendant.             )

       Merrill Schneider
       SCHNEIDER LAW OFFICES
       14415 S.E. Stark
       P. O. Box 16310
       Portland, OR  97292

         Attorney for Plaintiff

       Benjamin J. Groebner
       Stephanie R. Martz
       SOCIAL SECURITY ADMINISTRATION
       701 Fifth Avenue
       Suite 2900, M/S 901
       Seattle, WA  98104-1075

Adrian L. Brown
UNITED STATES ATTORNEY'S OFFICE
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204

Attorneys for Defendant

JONES, Judge:

Claimant Christopher Mansfield seeks judicial review of a final decision of the Commissioner of Social Security denying his application for child's insurance benefits ("CIB") and Supplemental Security Income ("SSI").

This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).  Following a careful review of the record, the court concludes that the Commissioner's decision is supported by substantial evidence, contains no errors of law, and must be affirmed.

## ADMINISTRATIVE HISTORY

Claimant filed an application for CIB on October 29, 2003 and an application for SSI on August 19, 2004, alleging his disability began on June 5, 1990.[1]  The applications were denied initially and on reconsideration.

Claimant requested a hearing, which was held before an Administrative Law Judge ("ALJ") on September 19, 2007.  Claimant, represented by counsel, appeared and testified at the hearing, as did a vocational expert ("VE").  On January 11, 2008, the ALJ issued a decision denying claimant's applications.  The ALJ's decision became the final decision of the Commissioner on November 19, 2008, when Appeals Council declined review.

---

[1]  The Administrative Law Judge found that the relevant period under consideration was June 5, 2002, claimant's eighteenth birthday, through the date of the decision.

## STANDARD OF REVIEW

This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence on the record as a whole. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).

## SUMMARY OF THE ALJ'S FINDINGS

The ALJ employed a five-step "sequential evaluation" process in evaluating claimant's disability, as required. See 20 C.F.R. §§ 404.1520, 416.920(a).

First, the ALJ found that claimant has not engaged in substantial gainful activity since June 5, 2002 (his eighteenth birthday) through the date of the decision. Second, the ALJ determined that claimant has severe impairments in the form of diabetes mellitus, depressive disorder not otherwise specified ("NOS"), and pervasive developmental disorder. Third, the ALJ found that claimant does not have an impairment or combination of impairments that meets or equals the criteria of any impairment in the Listing of Impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ then determined that claimant retains the following residual functional capacity ("RFC"):

[T]o perform a full range of work at all exertional levels but with the following nonexertional limitations: [A]void concentrated exposure to hazards such as heights or moving machinery because of diabetic condition that may affect his alertness; and simple, repetitive, structured, predictable work, and occasional contact with the public and co-workers because of his mental impairments.

Tr. 21. In making that determination, the ALJ found that claimant's "medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." Tr. 22.

Fourth, the ALJ determined that claimant has no past relevant work. Fifth, the ALJ found, based on the VE's testimony, that claimant, a young individual with at least a high school education and the ability to communicate in English, can perform jobs that exist in the national economy, including sweeper, hand packer, and laundry folder. Consequently, the ALJ concluded that claimant was not disabled at any time from June 5, 2002, through the date of his decision within the meaning of the Social Security Act, and denied claimant's applications for benefits.

## STATEMENT OF FACTS

The parties are familiar with the medical and other evidence of record. I will not, therefore, repeat the evidence except as necessary to explain my decision.

## DISCUSSION

Claimant challenges the ALJ's decision on several grounds. Specifically, he asserts that the ALJ erred in (1) determining that claimant's mental impairments do not cause at least two marked limitations or one marked limitation and repeated episodes of decompensation; (2) determining that claimant has any RFC; and (3) finding that claimant has been and is capable of performing jobs that exist in the national economy. I address these arguments in turn.

4 - OPINION AND ORDER

1.    The ALJ's Impairment Determination

At step three, the ALJ found that claimant's mental impairments do not meet or equal the
criteria of Listings 12.04 or 12.08 for affective and personality disorders, respectively. Tr. 20. In
making this finding, the ALJ considered the paragraph B criteria. Tr. 20. The ALJ determined
that the paragraph B criteria were not satisfied because claimant's mental impairments do not
cause at least two marked limitations or one marked limitation and repeated episodes of
decompensation. Tr. 21. The ALJ found this determination consistent with the assessments of
Dr. Elaine Greif, Ph.D., an examining psychologist, and Dr. Peter LeBray, Ph.D., a non-
examining psychologist consulted by Disability Determination Services. Tr. 21. Claimant
argues that the ALJ's impairment determination should be overturned because the ALJ
erroneously found that claimant's mental impairments impose only moderate difficulties in social
functioning and mild restriction in activities of daily living ("ADL"), and that claimant has
suffered only one or two episodes of decompensation of short duration. Plaintiff's Brief, p. 11.
For the following reasons, I affirm the ALJ's impairment determination.

A.    Difficulties in Social Functioning

The ALJ determined that the evidence showed that claimant's mental impairments impose
moderate difficulties in social functioning. Tr. 21. Claimant alleges this determination is
erroneous because the record demonstrates that claimant's social functioning is significantly more
impaired. Plaintiff's Brief, p. 11.

The ALJ recognized that claimant denied any socialization and is very socially avoidant.
Tr. 25. However, the ALJ found that claimant is "adequately capable of making friends" because
he emails groups and identified a friend he made while attending group sessions at Cascadia

5 - OPINION AND ORDER

Behavioral Health. Tr. 26. The ALJ also noted that Dr. Greif opined that claimant did not have the social skills to maintain competitive employment as of the time of her assessment and recommended vocational rehabilitation. Tr. 25. From this, the ALJ concluded that claimant is capable of overcoming his difficulties in social functioning such that he is capable of working. Tr. 25.

The record supports the finding that claimant is isolated and tends to isolate himself. However, it does not follow from this alone that claimant is incapable of functioning socially. The record also supports the ALJ's determination that claimant is capable of social interaction, even if such social interaction is awkward, difficult, and limited. Thus, the ALJ did not err in determining that claimant's mental impairments impose only moderate, not marked, difficulties in social functioning.

B.    Activities of Daily Living

The ALJ determined that the evidence showed that claimant's mental impairments impose mild restrictions in ADL. Tr. 21. Claimant argues this determination is erroneous because claimant's tendency to isolate himself has led to marked impairment in ADL. Plaintiff's Brief, p. 13.

The ALJ based his determination on claimant's mother's report that claimant feeds and plays with the family cats, plays computer games, shops online, works on his telescope, walks outside, vacuums his room, does his laundry, occasionally makes dinner and loads the dishwasher, and helps her when no one else is around. Tr. 26. The ALJ's determination was also based on claimant's testimony that he built a telescope aimed with electric motors, developed software to control the telescope, and created a website to sell it online. Tr. 25. The ALJ found

that the record supports claimant's testimony about his significant activities and I agree with this finding. Tr. 25. Therefore, the ALJ did not err in determining that claimant's mental impairments do not impose marked restrictions in ADL.

C.    Episodes of Decompensation

The ALJ determined that the evidence showed that claimant suffered one or two episodes of decompensation of short duration. Tr. 21. The Listings define "repeated episodes of decompensation, each of extended duration" as "three episodes within 1 year, or an average of once every 4 months, each lasting at least 2 weeks." 20 C.F.R. § 404, App. 1, Subpart P, § 12.00(C)(4).

Claimant asserts that the ALJ's findings are not consistent with Dr. LeBray's assessment that claimant suffered from one or two episodes of extended duration. Plaintiff's Brief, p. 14. Even accepting Dr. LeBray's report, one or two episodes of extended duration do not meet the Regulation's definition of "repeated episodes of decompensation, each of extended duration."

Claimant further alleges that claimant's decompensation was of extended duration because Dr. Kenneth R. Erickson, M.D., diagnosed claimant with major depressive disorder, recurrent, fairly stable and changed his antidepressant medication approximately two months after claimant was hospitalized for attempted suicide on October 22, 2003. Plaintiff's Brief, p. 14. Even when taken as true, this does not meet the requirement that there be repeated episodes of decompensation, as defined. Therefore, the ALJ did not err in determining that claimant only suffered one or two episodes of decompensation.

For the foregoing reasons, the ALJ did not err in finding that claimant's mental impairments, considered singly and in combination, do not meet or medically equal one of the listed impairments.

2.    The ALJ's RFC Determination

At step four, the ALJ determined that claimant has the RFC to perform a full range of work at all exertional levels, although he should "avoid concentrated exposure to hazards such as heights or moving machinery because . . . [his] diabetic condition may affect his alertness." Tr. 21. The ALJ concluded that claimant should be limited to "simple, repetitive, structured, predictable work, and occasional contact with the public and co-workers because of his mental impairments. Tr. 21. Claimant argues that the ALJ's RFC determination should be overturned because the ALJ improperly rejected claimant's testimony, the opinion of claimant's treating physician, and GAF scores, and relied on three mistakes of fact. Plaintiff's Brief, p. 15. For the following reasons, I affirm the ALJ's RFC determination.

a.    The ALJ's Credibility Determination

Claimant asserts that the ALJ improperly rejected claimant's testimony because he found that claimant's inadequate compliance with his diabetes treatment did not help his credibility and that his ADL suggest a greater level of functioning than claimant alleged. Plaintiff's Brief, p. 15.

If claimant produces "objective medical evidence of an underlying impairment" that could reasonably be expected to produce some degree of the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ must offer "clear and convincing reasons" to reject claimant's testimony. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).

The ALJ found that the objective medical evidence did not fully support claimant's allegations. Tr. 22. The ALJ noted, and the record supports, that claimant never received a diagnosis consistent with his complaints of occasional joint and muscle pain. Tr. 25. The ALJ also noted that complications resulting from claimant's diabetes required hospitalization on only a few occasions and, on each occasion, claimant was stabilized within a brief period of time, thereby showing that his diabetes is treatable. Tr. 22-23, 26.

Second, the ALJ found, and the record supports, that these diabetic complications resulted from claimant's poor compliance with his treatment plan. Tr. 22-23. The ALJ based his credibility determination in part on claimant's poor compliance. Tr. 23, 26. Claimant alleges that the ALJ erred because he did not consider the extent to which claimant's poor compliance was a result of his developmental disorder or financial situation. Plaintiff's Brief, p. 18. While the record shows that claimant has difficulty affording his medications, it also shows that claimant is very knowledgeable about his diabetes and his recommended diet and has access to low cost medical services. An inadequate explanation for failure to follow a prescribed course of treatment can be the basis for discrediting pain testimony. See Fair v. Bowen, 885 F.2d 597, 603-04 (9th Cir. 1989). The record as a whole supports the determination that claimant's poor compliance with his diabetes treatment plan was not adequately explained. Thus, the ALJ did not err in finding that claimant's poor compliance affects his credibility.

Third, the ALJ found that claimant engages in ADL that "require significant physical and mental effort, which is inconsistent with his allegations of total inability to work." Tr. 25. These ADL, which are described earlier in this Opinion, support the ALJ's interpretation of the evidence.

9 - OPINION AND ORDER

All of these factors, taken together, provide clear and convincing reasons justifying the ALJ's credibility determination. Consequently, I find no error in the ALJ's credibility determination.

      b.    The ALJ's Treatment of Dr. Mahr's Opinion

Claimant argues that the ALJ improperly rejected the opinion of claimant's treating physician, Dr. Peter Mahr, M.D. Plaintiff's Brief, p. 24. Dr. Mahr completed a form provided by claimant's counsel, wherein he reported that he had been claimant's primary care physician for over two years and had treated him for all of his conditions except diabetes. Tr. 352. Dr. Mahr diagnosed claimant as having developmental delay, sinus tachycardia, diabetes type I (juvenile), obesity, hypertension, back pain, and depressive disorder. Tr. 352. He limited claimant to occasional lifting and carrying 10 pounds, frequent lifting and carrying less than 10 pounds, standing and walking less than two hours in an eight-hour work day, sitting less than six hours in an eight-hour work day, and occasional bending, reaching, handling, climbing, balancing, stooping, and crouching. Tr. 354-55. Dr. Mahr concluded that claimant is incapable of even "low stress" jobs and that he would miss more than two days a month from even a sedentary job due to poor control of his diabetes and high anxiety level. Tr. 353, 355.

To reject the opinion of a treating physician, the ALJ must give "clear and convincing reasons" supported by "substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). If, however, the opinion of a treating physician is contradicted by another physician, the ALJ need only provide "specific and legitimate reasons" supported by "substantial evidence" to reject the opinion of the treating physician. Id.

The ALJ found that the record as a whole did not support Dr. Mahr's assessment that claimant is extremely limited. Tr. 25; see Tr. 352-55. The ALJ noted that "other physicians have not found any basis for . . . claimant's pain complaints; no definite diagnosis has been reached, and he has not pursued any regular treatment." Tr. 25. This finding was supported by reference to examinations on February 11, 2005, June 14, 2005, and June 19, 2007. Tr. 20. The examination on February 11, 2005 produced normal results, apart from diabetes mellitus and difuse myofascial pain. Tr. 384. The MRI on June 14, 2005 determined that there were no bony destructive lesions, compression fractures, or developmental anomalies and that there was only mild dextroscoliosis of the thoracic spine. Tr. 382. The MRI on June 19, 2007 found that

> [t]he vertebral body heights and intervertebral disc spaces appear well maintained. There is mild disc desiccation in multiple discs and a small Schmorl's node defect . . . [There is] [n]o evidence of significant disc protrusion. The cord has a normal configuration with no areas of atrophy, swelling or signal abnormality. No marrow abnormalities are noted. Tr. 379.

These reports, and the record as a whole, support the ALJ's rejection of the number and severity of limitations reported by Dr. Mahr.

The ALJ also did not err in discounting Dr. Mahr's opinion that was provided on a check-the-box form that did not reference objective findings in support of the assertion that claimant is limited to sedentary exertion. Tr. 25. The ALJ may properly discount the opinion of a treating physician that is in check-the-box form, unsupported by objective evidence, contradicted by the opinions of other physicians, and based on claimant's subjective descriptions of pain. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004).

The ALJ also did not err in finding that the record does not support Dr. Mahr's conclusion that claimant's conditions would cause him to miss more than two days of work from even a

11 - OPINION AND ORDER

sedentary job. Tr. 25. Instead, the record shows that claimant's diabetes is responsive to treatment and that claimant's anxiety may result from noncompliance (i.e., missed counseling sessions and voluntarily stopping medications) with recommended treatment. Tr. 25, 133-40, 181, 183-85, 188-89, 279-93, 315-16, 337. For the foregoing reasons, the ALJ properly rejected Dr. Mahr's opinion.

      c.     <u>The ALJ's Treatment of GAF Scores</u>

Claimant asserts that the ALJ improperly rejected the GAF scores assigned by Dr. Melissa Eshelman, M.D., Erin Menczer, M.S., and Kathy Lefor, M.S. Plaintiff's Brief, pp. 28-31.

The GAF rates an individual's psychological, social, and occupational functioning and is based on the worst of either the severity of the individual's symptoms or the level of the individual's functioning. Am. Psych. Ass'n, <u>Diagnostic & Statistical Manual of Mental Disorders</u>, 32-34 (4th ed. Text Revision 2000). GAF scores generally reflect symptom severity or level of functioning at the time of evaluation. <u>Id.</u> at 33. Therefore, GAF scores are not an indication of long-term symptoms or functioning. <u>Id.</u>

Dr. Eshelman assigned a GAF of 40, having evaluated claimant after he was treated by Providence Portland Medical Center because he threatened to commit suicide, apparently as a result of the stress he was experiencing due to general family discord and his parents' divorce. Tr. 259-62. Four days later Ms. Menczer assessed a GAF of 35. Tr. 339-44. Ms. Lefor assigned a GAF of 50 shortly after claimant's suicide attempt in 2003. Tr. 203-05. Thus, it was not improper for the ALJ to find that these GAF scores reflected temporal stressors in claimant's life rather than his long-term level of functioning. Tr. 24.

The ALJ also discounted the GAF scores assigned by Dr. Eshelman and Ms. Menczer because they are inconsistent with their mental status reports, which did not include any formal psychological evaluation. Tr. 24-25. Dr. Eshelman reported that claimant's fund of knowledge, language, and memory were below average and his insight and judgment were limited. Tr. 24, 261. However, she also noted that claimant was alert, cooperative, had concrete thought processes, and fair attention and concentration. Tr. 24, 261. Dr. Eshelman diagnosed depressive disorder, not otherwise specified; rule out major depressive disorder; rule out pervasive developmental disorder, not otherwise specified; and borderline intellectual functioning versus mild mental retardation. Tr. 24, 261. Ms. Menczer reported that claimant was depressed and had confused thought processes, inappropriate affect, limited insight, and poor long-term memory. Tr. 342. However, she also stated that claimant's attitude and body movement were unremarkable, his speech was appropriate, his attention was good, his judgment was fair, and he was orientated as to person, place, time, and circumstance. Tr. 24-25, 342. It was within the ALJ's province to determine whether there were contradictions or inconsistencies within these reports. Bayliss, 427 F.3d at 1216. "Determining whether inconsistencies are material . . . and whether certain factors are relevant to discount . . . [doctors'] opinions . . . falls within this responsibility." Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1999). I find there was substantial evidence on the record to support the ALJ's determination that Dr. Eshelman's and Ms. Menczer's reports were inconsistent with their assigned GAF scores. Thus, the ALJ did not err in discounting their GAF scores for this reason.

The ALJ was also entitled to give less weight to the opinions of Ms. Menczer and Ms. Lefor because they are "other sources" under the Regulations. 20 C.F.R. §§ 404.1513(d),

416.913(d). The ALJ provided sufficient reasons for discounting Ms. Lefor's diagnosis of mental retardation and GAF of 50, and the record as a whole supports his determination that these diagnoses are unsupported by objective evidence. Tr. 23-24.

      d.    <u>The ALJ's Findings of Fact</u>

Claimant alleges that the ALJ erred because he relied on three mistakes of fact. Plaintiff's Brief, p. 31. First, claimant finds fault with the statement that claimant was discharged from the hospital within twenty-four hours of his suicide attempt in stable condition. Plaintiff's Brief, p. 32. Claimant has failed to show how this alleged mistake of fact affected the ALJ's RFC determination. Regardless, the record shows that claimant was released from the intensive care unit within twenty-four hours and then transferred to the psychiatric unit for further care, which the ALJ recognized in his opinion. Tr. 23, 140. Even if the ALJ's findings were not completely clear, I find any error to be harmless.

Second, claimant takes issue with the finding that Dr. Greif considered claimant capable of working. Plaintiff's Brief, p. 32. Dr. Grief stated that claimant "does not appear to have the social or coping skills requisite to establish or maintain competitive employment at this time . . . Employment should be a goal, however, and referral can be made at some point to Vocational Rehabilitation Division." Tr. 209. The ALJ's finding that Dr. Grief deemed claimant capable of working with some vocational rehabilitation is a reasonable interpretation supported by substantial evidence. This court will not overturn that interpretation merely because there are other reasonable interpretations.

Third, claimant finds error with the assertion that claimant's counselor at Cascadia recommended against vocational rehabilitation. Plaintiff's Brief, p. 32. Claimant's counselor's notes provide:

> recommend Voc. Rehab or Well Spring. Well Spring may be an appropriate work option because [claimant] is easily intimidated by social situations and Well Spring may be a quiet enough environment for [claimant] to successful[ly] work. He is also in the process of applying for SSI, therefore he may not want to jeopardize his possibility of receiving benefits.

Tr. 348. The ALJ's finding that claimant's counselor recommended against vocational rehabilitation is also a reasonable interpretation and will not be overturned simply because other interpretations are also reasonable.

3.    The ALJ's Determination that Claimant Can Perform Jobs that Exist in the Significant Numbers in the National Economy

At step five, the ALJ determined that there are a significant number of jobs in the national economy that claimant is capable of performing. Tr. 27. Claimant argues that this determination should be overturned because it is based on (1) the ALJ's erroneous determination of claimant's RFC and (2) a hypothetical presented to the vocational expert ("VE") that did not include all of claimant's limitations. Plaintiff's Brief, p. 33.

The Commissioner bears the burden of proving that claimant is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920. To meet this burden, the Commissioner may elicit testimony from an impartial VE, based on a hypothetical that includes all of claimant's limitations that are supported by substantial evidence in the record. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 886 (9th Cir. 2005). The hypothetical

presented to the VE need not contain limitations that are based on properly discredited testimony or unsupported by substantial evidence. Bayliss, 427 F.3d at 1217.

As discussed above in Part 2 of this Opinion, the ALJ did not err in determining claimant's RFC and the ALJ properly discredited claimant's testimony and the opinions of Dr. Mahr, Dr. Eshelman, Ms. Menczer, and Ms. Lefor. Thus, the ALJ posed a proper hypothetical to the VE. The ALJ properly relied on the VE's testimony in reaching his decision at step five. Therefore, I affirm the ALJ's decision that claimant can perform jobs that exist in significant numbers in the national economy.

## CONCLUSION

For the foregoing reasons, and based upon a review of the record, I conclude that the Commissioner's decision is supported by substantial evidence, contains no errors of law, and is, therefore, AFFIRMED.

DATED this 14th day of May, 2010.

_____
ROBERT E. JONES
U.S. District Court

16 - OPINION AND ORDER